UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re<br><br>CHIMENE MARIE LADEVEREAUX,<br><br>Debtor | Chapter 13<br>Case No. 04-11376-RS |

[NOT FOR PUBLICATION]

MEMORANDUM OF DECISION ON
MOTION OF DEBTOR FOR
DISGORGEMENT OF COMPENSATION OF PREDECESSOR COUNSEL

By the motion before the Court, the Debtor seeks disgorgement of the $7,200 compensation that she, and her mother on her behalf, paid to her predecessor counsel in this case, Attorney Joseph Wheeler. The Debtor seeks disgorgement on two grounds: (1) that Mr. Wheeler misrepresented, in his Statement of Compensation, the amount of the compensation paid him in connection with the case and the source of that compensation and later failed to amend the Statement to reflect postpetition increases in compensation, warranting a sanction for failure to comply with 11 U.S.C. § 329(a); and (2) that the compensation paid exceeds the reasonable value of the services rendered, warranting return of the excessive payments under § 329(b). Attorney Wheeler opposes the motion, contending that the deficiencies in his disclosure of compensation were inadvertent, not intentional, and that the compensation he received was not excessive. After an evidentiary hearing, the Court now makes the following findings of fact and rulings of law. On the basis thereof, the Court will order disgorgement of $5,700 for knowing and intentional violation of the disclosure requirements of § 329(a) and deny further disgorgement of the fee.

**Facts and Procedural History**

a.   **Fee Disclosure**

The Debtor, Chimene Marie LaDevereaux, first met with Attorney Wheeler about her financial problems in October 2003. She faced unsecured debts on the order of $176,000, mostly on credit card obligations, and had already attempted without success to formulate a plan for repayment through a credit counseling agency. The agency had determined that her asset and income levels were such that they could not help her. In her first meeting with Attorney Wheeler, he too reviewed her financial predicament enough to determine in that meeting that the filing of a petition for relief under Chapter 7 of the Bankruptcy Code was her only real option. He considered the option of seeking relief under Chapter 13 but ruled that out because Ms. LaDevereaux did not have excess income with which to fund a Chapter 13 repayment plan. She did not decide at that time whether to file a bankruptcy petition, and, in any event, Attorney Wheeler advised her to wait at least three months before filing. Nonetheless, it is clear that from the start, all services he rendered to her were services in anticipation of and preparation for a bankruptcy filing.

Ms. LaDevereaux decided at that meeting to retain Mr. Wheeler. During this meeting and at Mr. Wheeler's request, Ms. LaDevereaux's mother, Zoe Affema Wheeler (no relation to Attorney Wheeler), who attended the first meeting to lend moral support to her daughter, gave Mr. Wheeler a check for $1000 as a retainer on her daughter's behalf. Counsel and client did not then or ever sign a written employment agreement.

It is not clear what discussion they had about the fee for his representing them. Both the Debtor and her mother testified credibly that Attorney Wheeler told them that his fee for handling the bankruptcy filing would be $1500. See Trial Transcript, pp. 25, and 80-81.

2

According to his own testimony, however, Mr. Wheeler merely told Ms. Ladevereaux and her mother, at either their first or second meeting,

> that I generally charged on an hourly basis, I usually charge $250, that have been practicing law for 41 years, that I was from the old school. I did not keep time records, I did not keep track of telephone calls, I did not keep track of all the time that I worked with my secretary. I said, "I have never in 44 years had a client tell me I overcharged," and I said, "When I ask you for a check, you won't say to me, 'What is this for?' You won't say to me, 'It's too much,' because you'll know that I spent the time on it." I said I could see that there's going to be an enormous amount of time if we do a bankruptcy.

Trial Transcript, at p. 93. I find his testimony credible.[1] Whether the Debtor accepted these terms or not—the record is silent on the question—she generally proceeded in accordance with them. From time to time, Mr. Wheeler would ask her for another payment, and she or her mother would supply one. Before the filing of the bankruptcy petition, Zoe Wheeler made three payments to Joseph Wheeler on her daughter's behalf: a check for $1,000 on October 18, 2003; a check for $1,700 on November 8, 2003; and a check for $1,000 on February 14, 2004.

Ms. LaDevereaux did ultimately decide to file a petition under Chapter 7. She signed the petition on February 21, 2004. Attorney Wheeler filed it for her on February 25, 2004.

With the petition he filed a document entitled Disclosure of Compensation of Attorney for Debtor (the "Disclosure"). The Disclosure is a standard bankruptcy form which he completed and signed; his signature is dated February 21, 2004. In relevant part, it states:

---

[1] I do not therefore conclude that he did not tell the Debtor and her mother, in some manner, that his fee would be, or perhaps that he normally charged, $1,500. Whatever he told them about a $1,500 fee, it was not to the exclusion of his telling him that he would work at an hourly rate.

3

Case 04-11376    Doc 146    Filed 03/06/06    Entered 03/06/06 15:44:39    Desc Main
Document    Page 4 of 17

1. Pursuant to 11 U.S.C. § 329(a) and Bankruptcy Rule 2016(b), I certify that I am the attorney for the above-named debtor(s) and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

For legal services, I have agreed to accept . . . . . . . . . . . . . . . $1,500.00

Prior to the filing of this statement I have received . . . . . . . . . $1,500.00

Balance Due . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $_____

2. The source of the compensation paid to me was:
   ✔ Debtor             Other (specify)

3. The source of compensation to be paid to me is:
   ✔ Debtor             Other (specify)

Attorney Wheeler signed this form after the certification, "I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding."

This Disclosure was incorrect in several respects. First, as Attorney Wheeler concedes, it understated the compensation he had received prior to filing the disclosure by $2,200. Second, as Attorney Wheeler further concedes, it wrongly identified the source of the compensation that had been paid to him: it had all been paid by the Debtor's mother, not by the Debtor herself. Third, it misstated the amount he had agreed to accept for his services rendered or to be rendered in connection with the bankruptcy: he had not agreed to a flat fee of $1,500 but had insisted on an hourly rate based on services actually rendered, which had already yielded a total fee paid (which I understand to reflect fees then earned) of $3,700 and very likely would increase for services to be rendered postpetition, in conjunction with the meeting of creditors if nothing else.

When he completed, signed, and filed this form, Attorney Wheeler knew the truth about these matters: that he had received $3,700 to date, that the source had been the Debtor's mother, that he was not working for a flat fee of $1,500. Why then did he file a declaration containing these false statements? In his response to the Debtor's motion to disgorge, he states that his

4

04-11376memo.TIF

errors were unintentional, not intentional misstatements.

In his testimony at the evidentiary hearing, however, he offered no excuse or explanation for these misrepresentations.[2] On this issue, the Debtor's mother, Ms. Wheeler, testified that, at a February 2004 meeting with him in his office, Attorney Wheeler, commented to her and the Debtor about the disclosure of his fee in this case, saying, "Well, I'm just going to put down 1500." The Debtor's mother remembered this vividly, she said, because she had already paid him "so much more." Although she had so testified shortly before Attorney Wheeler took the witness stand, Attorney Wheeler did not in his own testimony deny that he had made this statement; nor did he otherwise respond to Ms. Wheeler's testimony on the issue. Likewise, his attorney did not cross-examine Ms. Wheeler on the subject.[3] In view of Ms. Wheeler's credible

---

[2] The only attempt at explanation that I find anywhere in the record in this case is in Mr. Wheeler's Motion to Amend Original Disclosure of Compensation Statement, which his attorney filed on March 2, 2005. In it, counsel states:

> As the Court will note, Attorney Wheeler met with the Debtor several times in 2003. Much of the discussion at those meetings involved resolutions to Debtor's debt situation other than the filing of a bankruptcy.
>
> The final decision to file a Chapter 7 bankruptcy was not made until February of 2004, when the Debtor actually executed the bankruptcy documents. Attorney Wheeler regrets the error in not disclosing the earlier payments but offers the above to explain why he inadvertently failed to do so.

Counsel's statements in this motion are not evidence. Moreover, the "explanation" offered is inconsistent with the evidence at trial. In his first meeting with the Debtor, he determined that a Chapter 7 filing was the Debtor's only real option. Even if the final decision was not made until February, all their meetings, and all the time he expended on the Debtor's behalf, were in contemplation of and preparation for a bankruptcy filing. They did not pursue "resolutions to the Debtor's debt situation other than the filing of a bankruptcy."

[3] In his posttrial brief, counsel for Mr. Wheeler states that Mr. Wheeler "vehemently denies these allegations." Counsel's post-trial denial carries no evidentiary weight.

5

testimony, the lack of denial or rebuttal thereof, and the absence of explanation for the misrepresentations, especially as to amount paid and the nature of their fee arrangement,[4] I conclude that Attorney Wheeler's misrepresentations were not inadvertent or unintentional. I do not understand his motive for misrepresenting the facts about his compensation. Whatever the motive, however, I am satisfied that the misrepresentations were knowing and intentional.

After the filing of the bankruptcy petition, Attorney Wheeler rendered further services to the Debtor in connection with her bankruptcy case. As compensation for these services, he requested and received seven further payments: checks from the Debtor's mother in the amounts of $750 on April 2, 2004, $1,000 on April 11, 2004, and $750 on May 17, 2004; and four $250 payments from the Debtor herself, on August 11, August 26, September 11, and September 27, 2004. These postpetition payments total $3,500. Attorney Wheeler filed no supplemental disclosure as to these postpetition payments until March 2, 2005, and then only in response to the Debtor's present motion.

He testified that he did not file a supplemental disclosure of attorney compensation only because "I didn't know that I had to." I understand him to mean that he did not know that Rule 2016(b) required that a supplemental statement be filed after any payment not previously disclosed. This testimony is not credible for two reasons. First, Attorney Wheeler is not a bankruptcy neophyte. When these events occurred, he had been practicing bankruptcy law for

---

[4] I attribute little weight to the misrepresentation about the source of the payment because, in the Statement of Financial Affairs that was filed with the Declaration, the Debtor disclosed, in response to Question 9 concerning "Payments related to debt counseling or bankruptcy," that the fee had been paid by the Debtor's mother. There, too, however, the amount paid to Attorney Wheeler "for consultation concerning debt consolidation, relief under bankruptcy law or preparation of a petition in bankruptcy within one year immediately preceding the commencement of this case" was listed as $1,500. Unlike the Declaration, the Statement of Financial Affairs is signed by the Debtor and not by counsel.

6

nine years (and law in general for over forty). He had filed over one hundred cases under Chapter 7 of the Bankruptcy Code. The requirement that supplemental statements be filed has been part of Rule 2016(b) since 1987. Second, his failure to file supplemental statements was of a piece with his earlier statement that he had agreed to work for a flat fee, all which had already been paid. Had he originally disclosed that he was working on an hourly basis, his excuse for not filing supplemental disclosures might be more credible. In any event, having already stated that his fee was capped at $1,500.00, he had already hidden all compensation he would or might receive postpetition.

b.     **Value of Services Rendered**

The Debtor contends that the Attorney Wheeler's services in this case should be valued at zero because of two major shortcomings: that he failed to instruct the Debtor to list on her Statement of Financial Affairs certain bank accounts in her name; and that he permitted the Debtor to file a schedule of assets that did not disclose her interest in a certain time-share. Both errors, the Debtor contends, made her vulnerable to objections to discharge that the United States Trustee did file against the Debtor on the basis of the resulting omissions in her schedules and Statement of Financial Affairs. My findings on these issues are as follows.

Item 2 of the standard form for Schedule B, the schedule in which a debtor is to disclose her interests in personal property, requires a debtor to list her "checking, savings or other financial accounts, certificates of deposit" and the like. In the Schedule B she filed with her Chapter 7 petition, the Debtor, Ms. Ladevereaux, listed only two accounts, one at Citizens Bank and the other at "Marriott Employee's C.U.," each having a declared value of $1,000.00. On January 21, 2005, after she had retained successor counsel, she filed an amended Schedule B in

7

which, in response to Item 2, she disclosed eighteen (18) accounts.[5] These included a Marriott Saving Account, now with a declared value of $1,605.82; five accounts at Citizens Bank having a combined value of $2,347.80; and twelve accounts at Fleet holding only nominal sums and together having an aggregate value of $46.80. All accounts listed in the amended schedule were open on the date of the bankruptcy filing.

Another discrepancy appears with respect to closed accounts. Item 11 on the Statement of Financial Affairs requires a debtor to list financial accounts and instruments, held in the debtor's name or for the debtor's benefit, that were closed, sold, or otherwise transferred within one year immediately preceding the commencement of the case. In the Statement of Financial Affairs filed with her bankruptcy petition, Ms. Ladevereaux answered this question, "none." In the Amended Statement of Financial Affairs she filed on January 21, 2005, she listed five accounts and six certificates of deposit, all of which should have been listed in the original Statement of Financial Affairs.

A third discrepancy appears on Schedule B, Item 33, which requires an itemized listing of "[o]ther personal property of any kind not already listed." On the original Schedule B, the Debtor listed only a certain "Marriot Time Share," which she valued at $17,393.08. On her Amended Schedule B, however, she also listed a second time share, this one identified as Sheraton's Vistana Resort, and valued at $9,300.00. This second time share was owned by the Debtor on the date of her bankruptcy filing and should have been listed on the original Schedule B. Also, it had served as collateral for a loan until, approximately four months before the date of her bankruptcy filing, the Debtor paid the loan in full.

---

[5] The amended schedule is an amended disclosure of holdings as of the same date as the original, the date of the bankruptcy petition.

8

With respect to the missing time share, the evidence shows that Mr. Wheeler had given the Debtor different drafts of the schedules and Statement of Financial Affairs and asked her to complete them and check them over carefully. When the third draft went to the Debtor, the Sheraton Vistana time share was listed on it. The Debtor herself crossed it out and, after doing so, faxed the schedules back to Mr. Wheeler's secretary. Without first reviewing the changes the Debtor had made, he asked his secretary to make the changes and to give him the finished product. Though he knew she owned this time share, he never noticed that she had stricken it from the schedules. At a Rule 2004 examination of the Debtor, counsel for the United States Trustee asked the Debtor why she had not listed this time share on her Schedule B, but she dodged the question and gave no real answer. The Debtor is an educated woman and had in fact worked for a time as a night auditor at a hotel. She fully understood that this time share needed to be listed; and, although she testified that Attorney Wheeler had told her otherwise, her testimony is not credible, especially in view of the fact that the time share did appear on drafts of Schedule B. I find that the omission of this time share was knowing and intentional on the part of the Debtor. Had Attorney Wheeler noticed the deletion of the time share, he could, at best, have advised the Debtor to reconsider. That he did not does not change the fact that the misrepresentation was a knowing and deliberate act of the Debtor herself.

Likewise, the Court has no evidence that Mr. Wheeler was responsible for the omission of the many closed bank accounts and certificates of deposit from the Debtor's Schedule of Financial Affairs. Whatever he may have told her regarding the proper listing of *open* accounts on Schedule B, I have no evidence that he had any role in her omission of the closed accounts. Item 11 on the Statement of Financial Affairs is not unclear. It required the listing of all financial accounts and instruments, expressly including checking and savings accounts and certificates of

9

deposit, that were closed, sold, or otherwise transferred within one year before the commencement of the bankruptcy case. Ms. LaDevereaux did not testify that she misunderstood this section or that she even asked or received advice from Mr. Wheeler about its requirements.[6] Here again, the omission was her own knowing and deliberate misrepresentation. It is not clear whether Mr. Wheeler had enough knowledge of the Debtor's financial affairs to raise a question in his mind about the accuracy of her answer to Item 11. Again, however, his failure to inquire into the accuracy of this response does not change the fact that the misrepresentation was a knowing and deliberate act of the Debtor herself.

As for the omission of open accounts from Schedule B, the evidence is otherwise. At the Rule 2004 examination, counsel for the United States Trustee asked the Debtor why various open accounts had not been listed on Schedule B. Here Mr. Wheeler intervened, saying:

> Can I answer that? Probably - probably - I probably just asked, how much money did you have in the bank? And to be honest with you, I never envisioned that she had 28 accounts. And most of these accounts, as you can see, have negligible balances. So I - - I just usually ask a client how much cash and what are your bank accounts, and this is a rough idea of what she gave me.

Here, it appears that Mr. Wheeler did actually counsel the Debtor as to how to complete Schedule B and that she relied on his advice. His advice was wrong in that (1) he should not have counseled her to use rounded or approximate numbers and (2) he should have counseled her to list every account she had, regardless of its value. Her reliance on this advice was reasonable to an extent: he was far more familiar with this process than she. Still, I see no excuse for her having understated the value of her accounts by more than half. And, although she may have understood from Attorney Wheeler that it was appropriate to make just one entry for each

---

[6] Nor can she contend that she didn't think she had to list accounts having no value. This item asks specifically for accounts that are "closed" and by definition have no value.

institution at which she had accounts (as opposed to listing each account), I find no excuse for her failure to disclose that she held any accounts at Fleet Bank.

From the start of his representation of the Debtor, Attorney Wheeler believed, quite reasonably, that if Ms. Ledevereaux filed a Chapter 7 petition, it would be examined closely by the United States Trustee because the total of her unsecured debt, and especially credit card debt, was extraordinarily high: as later summarized by the United States Trustee, the Debtor listed unsecured debts totaling $176,181.00, of which $142,967.59 were attributable to sixteen separate credit cards. Attorney Wheeler informed Ms. LaDevereaux of this concern very early in his representation of her. When they filed the Debtor's petition, both Attorney Wheeler and the Debtor knew that the United States Trustee might well seek to examine the Debtor and her financial records and make a careful determination as to whether the filing should be challenged under § 707(b) of the Bankruptcy Code as a substantial abuse of the provisions of Chapter 7 and whether her discharge should be opposed under § 727(a).

As expected, the United States Trustee did indeed request and examine her records and, on August 13, 2004, conducted a deposition of Ms. LaDevereaux under Rule 2004(a). In the course of this examination, the United States Trustee uncovered the various discrepancies outlined above—the non-disclosure of financial accounts, of value therein in excess of the amount she disclosed, of the one time share—and also her failure to disclose a substantial payment on the time share within one year before the commencement of this case. On the basis of these discrepancies and other evidence adduced in the examination, the United States Trustee elected not to move for dismissal of this case under § 707(b) but, on October 21, 2004, did file a seven-count complaint objecting to the Debtor's discharge, Adversary Proceeding No. 04-1375. The complaint is based on objections under § 727(a)(2) and (a)(4)(A) relating to the

11

nondisclosures discussed above, but it also includes a count under §727(a)(3) for failure to keep records from which her financial condition might be ascertained and another under § 727(a)(5) for failure to explain satisfactorily the loss of assets (purchases and cash advances) and the deficiency of her non-exempt assets to meet her liabilities.

When the United States Trustee filed her complaint, Ms. LaDevereaux obtained new counsel. With his assistance, she filed an answer to the complaint, denying certain of its allegations and asking that it be dismissed. Shortly thereafter, however, she moved to convert her case to one under Chapter 13 and, when conversion was allowed, moved to suspend the adversary proceeding pending the filing, confirmation, and consummation of a Chapter 13 plan. The Court allowed the motion to suspend on February 22, 2005. The adversary proceeding has been abeyance since that time, no rulings having been entered on the merits.

With her motion to convert to Chapter 13, the Debtor also filed an amended statement of financial affairs, amended schedules B, C, F, G, H, I, and J, and a motion for leave to amend these schedules (which the Court allowed). The latter details the numerous respects in which the Debtor was amending the schedules. Among items being added to schedule B, the schedule of personal property, were not only the various bank accounts, IRA, and time share not previously disclosed, but also a television, a Bose radio, two computers, four watches, a compact disc collection valued at $6,000, and three cameras.

Despite these amendments to the schedules and statement of financial affairs, the Debtor's disclosures remained deficient in at least three significant respects. First, in response to item 3a in the Amended Statement of Financial Affairs, which asks for disclosure of all payments aggregating more than $600 made to any creditor within the 90 days immediately preceding the commencement of the case, Ms. LaDevereaux failed to list payments to one time share creditor

12

totaling approximately $750. Second, in response to item 3b in the Amended Statement of Financial Affairs, which asks for disclosure of all payments to or for the benefit of insider creditors within one year immediately preceding the commencement of the case, Ms. LaDevereaux failed to disclose her repayment of a $5,000 loan from her mother in October 2003. And third, in response to item 5 in the Amended Statement of Financial Affairs, which asks for disclosure of all property repossessed by a creditor or returned to a seller within one year immediately preceding the commencement of the case, the Debtor failed to disclose her abandonment to a creditor of a Virginia time share in November 2003.

Mr. Wheeler was not responsible for having brought on the United States Trustee's objection to discharge and the resulting failure of Ms. LaDevereaux's petition for relief under Chapter 7 and need for recourse to Chapter 13. His bad counsel on one item (open financial accounts) was partly responsible for the inaccuracy of her disclosures on that item. But that item was just one of many on which her disclosure was inadequate, and it was by no means the difference between success and failure in Chapter 7. Most of the omissions from the schedules and statements of financial affairs were deliberate omissions for which she alone was responsible. These were extensive and more than adequate basis the objection to discharge.[7] The United States Trustee also objected to discharge under § 727(a)(3) and (a)(5), grounds for which Ms. LaDevereaux does not even contend that Attorney Wheeler might be responsible. Moreover, insofar as Ms. LaDevereaux did rely in good faith on the advice of counsel, this reliance would tend to negate the fraudulent intent that must be proven in support of objections to discharge under § 727(a)(2) and (a)(4)(A). I therefore find no basis for the allegation that

---

[7] I make no ruling here on the merits of the United States Trustee's various grounds for objection to discharge. I find only that she had good cause to file her complaint.

13

deficiencies in Attorney Wheeler's representation were the cause of the failure of the Debtor's attempt at relief under Chapter 7.

**Discussion**

a.  **Fee Disclosure**

An attorney representing a debtor in a bankruptcy case is obligated by § 329(a) of the Bankruptcy Code to "file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation." 11 U.S.C. § 329(a). Rule 2016(b) requires that the statement required by §329(a) be filed within 15 days after the entry of the order for relief—which, in a voluntary case, is the date of the filing of the petition[8]—and that a supplemental statement be filed within 15 days after any payment or agreement not previously disclosed. FED. R. BANKR. P. 2016(b). These provisions serve at least two purposes: they enable the court to monitor the relationship between debtor and counsel and thus to protect against overreaching by debtor's counsel; and they also protect against withholding assets from the estate by making it difficult to shield assets with counsel. *In re Symes*, 174 B.R. 114, 116 (Bankr. D.Ariz. 1994) and cases cited. They are intended to protect the Debtor, the estate, and the integrity of the system.

As I found above, Attorney Wheeler made serious misrepresentations in the Disclosure that he filed with the petition. Most significantly, he indicated that he had agreed to represent the

---

[8]  11 U.S.C. § 301 (the commencement of a voluntary case under a chapter of the Bankruptcy Code constitutes an order for relief under such chapter).

14

Debtor for a flat fee of $1,500, when in fact he had agreed to work on an hourly basis at $250 per hour; and he indicated that he had received only $1,500 for his work when in fact he had already received $3,700. He also failed to submit supplemental statements reflecting the $3,500 in further payments he received postpetition. I have found that his misrepresentations in the Disclosure were intentional and that his failure to file supplemental statements was likewise intentional, an omission made in conscious disregard of a known duty and in furtherance of his earlier misrepresentation that his fee was limited to $1,500.

Attorney Wheeler does not dispute the Court's authority to order disgorgement as a sanction for misrepresentations in the disclosure required by § 329(a). He and the Debtor dispute only the extent of the appropriate sanction. He argues for little or no disgorgement on the basis (already rejected) that his failings were inadvertent. The Debtor argues for disgorgement of all fees paid, citing a number of cases in which the court has so ordered. Having found that Mr. Wheeler's conduct was intentional and not inadvertent, his argument for lenience carries no weight. However, in view of the actual fee agreement, the size of the fee, and the extent of the service he actually provided, I also find that complete disgorgement would be excessive. The Court will limit counsel to the $1,500 compensation actually disclosed and require disgorgement of the balance, $5,700.

b. **Value of Services Rendered**

The Debtor argues, as a second basis for disgorgement, that under § 329(b) of the Bankruptcy Code, the Court should compel complete disgorgement of the fees she and her mother paid to Attorney Wheeler on the basis that the compensation paid him exceeds the

15

reasonable value of the services he provided.[9] She faults him in particular for the two major shortcomings that were the subject of the above findings of fact and states that those shortcomings reduce the value of his services to zero. In view of the above ruling requiring disgorgement on other grounds of all but $1,500, the Debtor's challenge under § 329(b) requires that the Court determine whether the value of Attorney Wheeler's services to the Debtor was less than $1,500.

It was not. Attorney Wheeler spent numerous hours on this case, many more than he would have on a smaller and simpler case. He informed the Debtor from the start that her petition for relief under Chapter 7 would be closely scrutinized for abuse and was by no means sure to result in a Chapter 7 discharge. The importance of accurate disclosure could not have been lost on her. He misadvised her on one matter but was by no means the cause of her troubles. She herself decided that Chapter 7 was worth a try, and he helped her in that effort. His services to her were worth at least $1,500.

c. **Standing**

As an afterthought, Attorney Wheeler contends that the Debtor lacks standing to seek disgorgement of the those fees paid him by the Debtor's mother. The Court disagrees. The fees paid by the Debtor's mother were paid on the Debtor's behalf. She surely has standing to protect the value of monies advanced for her benefit. Moreover, the disclosure requirement in § 329(a) and the fee review mechanism in § 329(b) are intended to protect the debtor regardless of the

---

[9] Section 329(b) states that "If such compensation"—meaning the compensation required to be disclosed by § 329(a)—"exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive."

16

source of compensation. Also, on the issue of whether there exists cause for sanction or disgorgement for misrepresentations and omissions in the disclosure required by § 329(a) and Rule 2016(b), this Court, knowing what it does now, can and would raise those issues on its own motion if the Debtor were deemed to lack standing to do so. See 11 U.S.C. § 105(a) and FED. R. BANKR. P. 9011(c)(1)(B).

d.   **Disgorgement**

The Court has determined that Attorney Wheeler must disgorge $5,700 of the $7,200 he was paid, of which $6,200 (86%) came from the Debtor's mother and the balance from the Debtor herself. Accordingly, $4900 (being approximately eight-six percent of the amount to be disgorged) shall be remitted to the Debtor's mother. The $800 balance shall be remitted to the Chapter 13 Trustee for distribution to the Debtor's unsecured creditors; this sum shall supplement the distribution required by the Chapter 13 plan itself and shall not replace contributions otherwise required of the Debtor. A separate order will enter allowing the motion to disgorge in accordance with this paragraph.

Date: March 6, 2006

_Robert Somma_
Robert Somma
United States Bankruptcy Judge

cc:  Richard Gottlieb, Esq., for Debtor
     William Markley, Esq., for Attorney Joseph Wheeler
     Joseph Wheeler, Esq.
     Eric Bradford, Esq., for United States Trustee
     Doreen Solomon, Esq., Chapter 13 Trustee